IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEYBANK NATIONAL ASSOCIATION,    )
        )
        Plaintiff,    )
        )
    v.        )    Civil Action No. 05-144
        )
TODD A. REIDBORD, ESQ., and    )
MICHAEL A. GOLDSTEIN, ESQ., CPA,    )
        )
        Defendants    )

**MEMORANDUM**

Pending before the Court are a Motion to Dismiss filed by Defendant Michael A. Goldstein, Esq. ("Mot. Dis.," Docket No. 8), a Praecipe for Entry of Non Pros filed by Defendant Todd E. Reidbord, Esq., and an untitled document filed by Mr. Goldstein, directing the Clerk of Courts to enter a judgment of non pros in his favor. (Docket Nos. 12 and 13, respectively.[1]) For the reasons discussed below, the Motion to Dismiss is granted in its entirety. The Praecipe for Entry of Non Pros is denied as moot with regard to Mr. Goldstein and denied as to Mr. Reidbord.

**I.  INTRODUCTION**

    A.  <u>Factual History</u>[2]

---

   [1] Although Docket No. 13 is not explicitly designated as a "praecipe," we shall refer to both documents as such for the sake of convenience.

   [2] The facts in this section are taken from the Complaint and construed in favor of Plaintiff.

Walnut Capital Partners ("Walnut Capital"), not a party herein, is a Pittsburgh real estate developer.  Mr. Reidbord is president and in-house counsel of Walnut Capital; Mr. Goldstein is an attorney with an unidentified relationship to Walnut Capital other than a shared street address in Pittsburgh, Pennsylvania.  In March 2000, Plaintiff KeyBank National Association ("KeyBank") loaned $26.5 million to Walnut Capital ("the Loan.")

As a condition of the Loan, Walnut Capital was required to enter into an interest rate hedging transaction through any acceptable entity of its choice.  KeyBank and Walnut Capital entered into a "ten year forward starting interest rate swap" ("the Swap") in the amount of $13.5 million and a two-year forward period.  The Swap was intended to hedge against rising interest rates during the lifetime of the Loan and to be settled for cash when the Loan terminated.  The direction of the Swap payment was determined by interest rate movements: if those rates increased, KeyBank would pay Walnut Capital; if interest rates fell, Walnut Capital would pay KeyBank.

As a further condition of the Loan and the Swap, KeyBank required Walnut Capital to provide a legal opinion letter ("the Opinion Letter"), confirming, *inter alia*, "the validity and complete legal enforceability of the documents and transactions between the parties."  (Complaint, "Compl.," ¶ 9.)  On March 23,

2

2000, in a letter signed by Mr. Goldstein, he stated:

> We have made such legal and factual examinations and
> inquiries as are pertinent or necessary for the purpose
> of rendering the opinions herein expressed.  We have
> examined and are familiar with the originals or copies,
> certified or otherwise, identified to our satisfaction,
> of such documents, records and other instruments as are
> necessary for the furnishing of this opinion letter.

> The Loan Documents executed by the Guarantors[3] . . .
> are legal, valid and binding obligations enforceable
> with respect to each of the Guarantors in accordance
> with their terms.

(Compl., ¶ 10; *see also* Opinion Letter,[4] ¶ 7.)

Plaintiff claims that it did not know when it entered into

the Loan and the Swap that the Opinion Letter was written by Mr.

Reidbord, not Mr. Goldstein; further, it claims that had it known

of Defendants' "malfeasance" in this regard, it would not have

entered into the agreements.

In the two years following execution of the Loan, "interest

rates plummeted."  (Compl., ¶ 14.)  As a result, when Walnut

---

[3]  Mr. Reidbord and other principals of Walnut Capital Partners
were "Guarantors" of the Loan, Mr. Goldstein was not.  (Opinion Letter
at 1.)

[4]  Generally, a court will not consider documents outside the
pleadings when deciding a motion to dismiss without advising the
parties of its intention to do so and converting the motion to a
motion for summary judgment.  Fed.R.Civ.P. 12(b).  However, a motion
to dismiss under Rule 12 is not converted to a motion for summary
judgment under Fed.R.Civ.P. 56 when the court considers an
"undisputedly authentic document . . . if the plaintiff's claims are
based on the document."  <u>Pension Benefit Guar. Corp. v. White Consol.
Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Here, at least one of
Plaintiff's claims stems from the Opinion Letter.  KeyBank has not
questioned the authenticity of the version of the Letter attached to
the Motion to Dismiss.  The Court has also considered the Amended
Complaint in the Swap Litigation inasmuch as Plaintiff's claims are
also based on the allegations therein.

Capital terminated the Swap in November 2002, it was required to pay KeyBank some $3.6 million.

On February 23, 2003, Walnut Capital sued KeyBank, claiming fraud and negligent misrepresentation in connection with the Loan.  *See* <u>Walnut Capital Partners, *et al.* v. KeyBank N.A., *et al.*,</u> CA 03-0284 (W.D. Pa. 2003) ("the Swap Litigation.") Plaintiff claims that in opposition to a motion to dismiss the amended complaint in the Swap Litigation, Walnut Capital argued for the first time that the certain statements in the Swap documents were general disclaimers and, as such, not enforceable. KeyBank claims this position directly contradicts the representations made in the Opinion Letter regarding the validity and enforceability of the transactions and the Loan Documents.

B.   <u>Procedural History</u>

Plaintiff filed suit in this Court on February 8, 2005. In Count I of the Complaint, KeyBank seeks indemnification from Mr. Reidbord and Mr. Goldstein, contending that they are "primarily liable" for the costs, legal fees, and expenses KeyBank has incurred in the Swap Litigation.  (Compl., ¶ 30.)  In Count II, KeyBank seeks contribution from Defendants, claiming that should it be found liable in the Swap Litigation, any injury to Walnut Capital resulted at least in part from Defendants' malfeasance.  (Compl., ¶¶ 34-36.)  Plaintiff claims in Count III that Defendants are liable for "direct legal malpractice" in

connection with the Opinion Letter.  (Id., ¶¶ 38-46.)  In Count
IV, Plaintiff alleges that in order to induce KeyBank to enter
into the Loan and Swap, Defendants fraudulently represented that
Mr. Goldstein wrote the Opinion Letter, knowing that KeyBank
would not have accepted the letter had it known it was written by
Mr. Reidbord.  (Id., ¶¶ 48-55.)  Finally, in Count V, KeyBank
seeks a declaratory judgment that Defendants are jointly and
severally liable for all of KeyBank's future costs, legal fees
and expenses incurred in the Swap Litigation and for any future
adverse judgment entered against KeyBank.  (Id., ¶¶ 57-62.)

     Mr. Goldstein filed the pending Motion to Dismiss on March
14, 2005.  On April 13, 2005, each Defendant filed a praecipe for
entry of judgment of non pros, seeking to dismiss the entire
Complaint inasmuch as Plaintiff had failed to timely file a
certificate of merit as required by Pa.R.Civ.P. 1042.3.  In
response to the latter, Plaintiff filed a certificate of merit
for each Defendant on April 29, 2005, 80 days after the Complaint
was filed.  (See Docket Nos. 17 and 18.)

     While the motion to dismiss and praecipes were pending, the
Court granted summary judgment in favor of KeyBank on June 14,
2005, in the Swap Litigation, concluding that the parol evidence
rule and the existence of an integrated contract barred each of
Walnut Capital's claims in that suit.  (Swap Litigation, Docket
No. 94.)  Walnut Capital appealed that decision to the Third

Circuit Court of Appeals (id., Docket No. 96) where, as of the date of this Memorandum, it is still pending.

      C.   <u>Jurisdiction and Venue</u>

      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332 inasmuch as KeyBank is a national banking association with its principal place of business in Cleveland, Ohio, and both Defendants are residents and citizens of Pennsylvania.  The Court has jurisdiction over Plaintiff's declaratory judgment claim by virtue of 28 U.S.C. § 2201.  Venue is appropriate pursuant to 28 U.S.C. § 1391 because both Defendants are residents of this district and the claim is brought in diversity.

## II.  STANDARD OF REVIEW

      In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6),[5] all factual allegations and all reasonable inferences therefrom must be accepted as true and viewed in a light most favorable to the plaintiff.  <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d. 663, 665-666 (3d Cir. 1988).  In ruling on a motion to dismiss, the court must decide whether there are sufficient facts pled to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer.

---

    [5]  Defendant cites no Federal Rule of Civil Procedure as the basis of his Motion to Dismiss in either the Motion itself or the brief in support thereof.  However, we have concluded, considering the standard of review proposed in his brief (at 3), that his motion is based on Fed.R.Civ.P. 12(b)(6).

<u>Id</u>. at 666.  A motion to dismiss will be granted only if it appears that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957).

The claims brought by KeyBank are based in Pennsylvania, not federal law, with the exception of the declaratory judgment claim in Count V.  As a federal court sitting in diversity, we will apply Pennsylvania substantive law to those claims.  *See* <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78-80 (1938); <u>State Farm Mut. Auto. Ins. Co. v. Coviello</u>, 233 F.3d 710, 713 (3d Cir. 2000). The decisions of the Pennsylvania Supreme Court are the authoritative source of Pennsylvania law, but if that court has not yet decided a specific issue, this Court will be guided by decisions of lower state courts and by federal courts interpreting state law.  <u>Coviello</u>, <u>id.</u>

## III. ANALYSIS

A.  <u>Motion to Dismiss</u>[6]

1.  *Count I – Indemnification:* In Count I, KeyBank claims that it is entitled to indemnification from Defendants "for all of the costs, legal fees, and expenses incurred to date by KeyBank in the Swap Litigation."  (Compl., ¶ 30.)  In Count V,

---

[6]  We note as a threshold matter that the Motion to Dismiss applies only to the claims brought by KeyBank against Mr. Goldstein inasmuch as Mr. Reidbord did not join in this Motion and has answered the Complaint.

in which it seeks a declaratory judgment, KeyBank expands this indemnification demand to include "any future adverse judgment entered against KeyBank in the Swap Litigation."  (Id., ¶ 57.)

Defendant Goldstein argues first that this claim is premature inasmuch as KeyBank has not been found liable to Walnut Capital in the Swap Litigation and second, that Pennsylvania case law does not recognize the right of indemnification in fraud cases.  (Mot. Dis., ¶¶ 15-16.)  In its brief in opposition to the Motion to Dismiss, KeyBank urges the Court to address the indemnification issue now because "given the large costs and fees being incurred by both parties in the Swap Litigation, such expenses could be an exercise in futility if Reidbord and Goldstein will be 'on the hook' for the ultimate payment of any damages to Walnut Capital Partners."  (Opposition to Michael A. Goldstein's Motion to Dismiss, Docket No. 11, "Plf.'s Opp.," at 4-5.)  We not only agree with Defendant that KeyBank's claim for indemnification for any adverse judgment against it has not yet accrued,[7] we also agree that KeyBank has failed to state a claim for indemnification, given the facts of this suit.

---

[7]  "It is long-settled that claims for indemnification or contribution do not arise until the party seeking contribution or indemnity has had a judgment rendered against it or upon payment of a claim."  Site-Blauvelt Eng'rs, Inc. v. First Union Corp., 153 F. Supp.2d 707, 710 (E.D. Pa. 2001), citing Sea-Land Serv., Inc. v. United States, 874 F.2d 169, 171-172 (3d Cir. 1989); Shouey v. Duck Head Apparel Co., Inc., 49 F. Supp.2d 413, 422-23 (M.D. Pa. 1999); Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel, 832 F. Supp. 922, 934-35 (E.D. Pa. 1993).

Under Pennsylvania law, a person has a right to indemnity only when "without active fault on his own part, [he] has been compelled, by reason of some legal obligation to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." Builders Supply Co. v. McCabe, 77 A.2d 368, 370 (Pa. 1951), Willet v. Pa. Med. Catastrophe Loss Fund, 702 A.2d 850, 854-55 (Pa. 1997); *see also* Allegheny Gen. Hosp. v. Phillip Morris, Inc., 116 F. Supp.2d 610, 621 (W.D. Pa. 1999). "Secondary liability exists, for example, where there is a relation of employer and employee, or principal and agent." Builders Supply Co., id.

Here, KeyBank seeks indemnification for speculative damages it may be compelled to pay, and/or the costs of defending itself, in the Swap Litigation. The claims against KeyBank therein arise from its alleged fraudulent and negligent misrepresentation, fraudulent concealment of the degree of risk associated with the Swap, and fraud-suitability. (Swap Litigation, Amended Complaint, Docket No. 36.) The only reference to Mr. Goldstein in the Swap Litigation is to identify him as chief financial officer of the Walnut Capital limited partnerships bringing suit against KeyBank and its co-defendant, McDonald Investments, Inc. As a non-party, he could not be found liable in the Swap Litigation for any injury to Walnut Capital; nor it is claimed in the Swap Litigation that he was an employee or agent of KeyBank

for whose malfeasance KeyBank could be found vicariously liable. It follows, then, that if Walnut Capital were to prove in the Swap Litigation that it had been damaged (i.e., if the Court of Appeals reversed the grant of summary judgment in favor of KeyBank and remanded for further proceedings), such injury could logically result only from KeyBank's own conduct.

With regard to the claim that Mr. Goldstein should indemnify KeyBank for the "costs, legal fees, and expenses" it has incurred in defending itself in the Swap Litigation, Plaintiff cites no case law to support such a claim, and the Court has been unable to independently identify any legal authority that would support its entitlement to such relief.

The Motion to Dismiss is granted as to Count I.

2.   *Count II - Contribution:*  Count II alleges that KeyBank is entitled to contribution from Defendants for costs, legal fees and expenses, as well as any adverse judgment which it incurs in the Swap Litigation.  (Compl., ¶ 35, *see also* 42 Pa. C.S. § 8324(a) on which Plaintiff bases this claim.)  KeyBank claims that the alleged injury to Walnut Capital in the Swap Litigation is "single and indivisible, cannot be apportioned, and results from (i) Defendants' malfeasance . . . and (ii) any alleged torts of misrepresentation or omission asserted in the Swap Litigation against KeyBank."  (Compl., ¶ 34.)

Defendant argues that not only is the claim for contribution

10

premature, but under no circumstances could Plaintiff establish that he and KeyBank could be found to be joint tortfeasors in the Swap Litigation; thus there is no legal basis for its claim to contribution.  (Brief in Support of Motion to Dismiss, Docket No. 9, "Def.'s Brief," at 4-5.)  KeyBank does not address Count II in its opposition to the motion to dismiss, other than in the context of its claim for a declaratory judgment.  (Plf.'s Opp. at 2-5.)  The Court agrees with Defendant that KeyBank's claim for contribution is without legal basis.

Pennsylvania law recognizes the general rule that "the right of contribution exists among joint tort-feasors."  42 Pa. C.S. § 8324(a); *see also* Mattia v. Sears, Roebuck & Co., 531 A.2d 789, 791 (Pa. Super.Ct. 1987), noting that "the equitable obligation of contribution may be asserted where: (1) the parties combined to produce the plaintiff's injury; (2) the parties are each liable in tort to the plaintiff; and (3) a tortfeasor has discharged the common liability by paying more than his pro rata share."

A claim for contribution does not accrue until judgment is entered in favor of the original plaintiff, which, as Mr. Goldstein argues, has not occurred in the Swap Litigation.  *See* cases cited in footnote 7.  Although Mr. Goldstein is not a party to the Swap Litigation, KeyBank may assert a claim against him for contribution in a separate action such as this.  Mattia, 531

A.2d at 791.  However, such a claim requires that KeyBank "stand
in the shoes" of Walnut Capital and prove that Mr. Goldstein was
a joint tortfeasor "in that his tortious conduct also caused the
harm at issue."  Id.  Moreover, in the second action, the party
claiming contribution "must plead sufficient facts to sustain a
cause of action against the new defendant," and "may not rely on
bald assertions."  Mattia, id. at 792 (internal citations
omitted.)  Here, Plaintiff baldly asserts that Defendant's
malfeasance in connection with the Opinion Letter directly and
proximately damaged *KeyBank* (Compl., ¶ 36), but fails entirely to
"stand in the shoes" of Walnut Capital and plead sufficient facts
to explain how Mr. Goldstein's alleged malfeasance resulted in
injury to *Walnut Capital*.

Count II is therefore dismissed as both premature and
insufficiently pled.

3.  *Count III – Direct Legal Malpractice:*  Plaintiff
claims that Defendants are liable for "direct legal malpractice[8]"
in connection with the Opinion Letter.  That is, KeyBank required
the Opinion Letter as a condition precedent to entering into the
Loan and relied upon representations therein; it also relied on
Mr. Goldstein's legal expertise to ensure that the Opinion Letter

---

[8]  The Court is unable to discern how "direct" legal malpractice
differs from garden-variety legal malpractice.  According to our
research, no reported case in Pennsylvania uses this distinction.
Therefore, we will assume there is no significance to the adjective
"direct."

12

was complete and accurate in all respects.  KeyBank claims it would not have made the Loan or entered into the Swap if the Opinion Letter had not been provided or if it had known that the letter was drafted by Mr. Reidbord.  Due to Defendants' legal malpractice, KeyBank has expended considerable time, effort and money defending the Swap Litigation and seeks damages to compensate for those expenditures.  (Compl., ¶ ¶ 38-46.)

In Pennsylvania, a legal malpractice may be based on either tort or breach of contract.  Williams v. Sturm, 110 F. Supp.2d 353, 357 (E.D. Pa. 2000), *citing* Bailey v. Tucker, 621 A.2d 108, 112 (Pa. 1993).  Although KeyBank does not state the legal basis of its malpractice claim, there is no allegation in the Complaint that a relationship existed between Mr. Goldstein and Plaintiff which would require a breach of contract analysis.

Under Pennsylvania tort law, a legal malpractice claim requires that the plaintiff establish the following elements: "1) employment of the attorney or other basis for duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff."  Kituskie v. Corbman, 714 A.2d 1027, 1029-1030 (Pa. 1998), *citing* Rizzo v. Haines, 555 A.2d 58, 65 (Pa. 1989).

We shall assume solely for the sake of analysis that Plaintiff would be able to establish that its reliance on the Opinion Letter created a duty on the part of Mr. Goldstein

13

sufficient to satisfy the first element of its malpractice claim,[9] and that Mr. Goldstein failed to "exercise ordinary skill and knowledge."  However, we agree with Defendant that under no circumstances could KeyBank establish that any liability it might incur in the Swap Litigation was proximately caused by the fact that Mr. Reidbord, not Mr. Goldstein, authored the Opinion Letter.

At this point in time, KeyBank has suffered no damages in the Swap Litigation; in fact, summary judgment has been granted in its favor, rendering any claim for damages premature.  As in Trauma Serv. Group, P.C. v. Hunter, MacLean, Exley & Dunn, P.C., CA No. 99-CV-5979, 2000 U.S. Dist. LEXIS 3712 (E.D. Pa. Mar. 24, 2000), this appears to be a case in which the plaintiff is attempting to bring a legal malpractice claim despite a successful resolution of the underlying claim.  As the court in Trauma Services noted, "one of the elements a plaintiff must prove in bringing a legal malpractice claim is damages, namely that he would have prevailed in the underlying action but for the attorney's negligence."  Id. at *10, citing Duke & Co. v. Anderson, 418 A.2d 613, 617 (Pa. Super. Ct. 1980); McCartney v. Dunn & Conner, Inc., 563 A.2d 525, 528 (Pa. Super. Ct. 1989).

---

[9]   But see Krauss v. Claar, 879 A.2d 302, 309 (Pa. Super.Ct. 2005), noting that under Pennsylvania law, a claim for legal malpractice must be asserted by the attorney's actual client.  The only exception is a "narrow class of third party beneficiaries, specifically, for named legatees of a will, whose legacies have failed as a result of attorney malpractice."  Id.

Here, the underlying case has been decided in favor of KeyBank, thus precluding a claim that it was damaged as a result of malpractice in connection with the Opinion Letter.  Count III is therefore dismissed.

      4.   *Count IV – Fraud:*  In Count IV, KeyBank claims that Defendants knowingly, intentionally and purposefully concealed the following material facts:

    (1)  Mr. Reidbord, not Mr. Goldstein, drafted the Opinion Letter;

    (2)  Mr. Goldstein did not ensure that the Opinion Letter was complete and accurate in all respects and fully covered all the transactions between the parties, including the Swap; and

    (3)  Mr. Goldstein did not read the Opinion Letter before sending it to KeyBank.

(Compl., ¶ 48.)

To state a claim for fraud under Pennsylvania law, a plaintiff must establish:

    (1)  a representation;

    (2)  which is material to the transaction at hand;

    (3)  made falsely, with the knowledge of its falsity or recklessness as to whether it is true or false;

    (4)  with the intent of misleading another into relying on it;

    (5)  justifiable reliance on the misrepresentation; and

    (6)  resulting injury proximately caused by the reliance.

Foster v. JLG Indus., 372 F. Supp.2d 792, 800 (M.D. Pa. 2005), *quoting* Feeney v. Disston Manor Personal Care Home, Inc., 849 A.2d 590, 597 (Pa. Super. Ct. 2004).

Here, Plaintiff alleges that the material misrepresentation of fact is that Mr. Goldstein, not Mr. Reidbord, drafted the Opinion Letter.[10]  It claims Defendants falsely represented that he was the author because they knew KeyBank would not have accepted a letter written by Mr. Reidbord inasmuch as he was a principal in Walnut Capital as well as a guarantor of the Loan. Plaintiff also alleges that Defendants made the misrepresentation with the intent of misleading KeyBank into believing it had received a legal opinion from a relatively disinterested third party.  KeyBank claims it justifiably relied on that misrepresentation and consequently entered into the Loan. (Compl., ¶¶ 48-53.)  Thus, elements one through five of a claim for fraud have been stated in sufficient detail to withstand a motion to dismiss.  However, to the extent KeyBank was injured, such injury cannot have been proximately caused by reliance on that misrepresentation.

First, KeyBank suffered no injury from the Loan transaction itself.  That is, when the Swap was settled in November 2002, Walnut Capital paid the amount due, thus adhering to the terms of the agreement.  Second, although Walnut Capital subsequently sued KeyBank for fraud in connection with the Loan transaction,

---

[10]  The Court concludes that other two alleged fraudulent actions – that Mr. Goldstein did not ensure that the Opinion Letter was complete and accurate and that he did not read the Opinion Letter before sending it to KeyBank. – are simply restatements of the general claim that Mr. Goldstein fraudulently represented himself as the source of the Opinion Letter.

summary judgment has been granted in KeyBank's favor, so KeyBank

has suffered no damage has a result of the Swap Litigation.  The

only "injury" Plaintiff has incurred is the cost of defending

itself in the Swap Litigation, an injury which cannot, as a

matter of law, have been *proximately* caused by the fact that Mr.

Reidbord wrote the Opinion Letter.

> As the Third Circuit Court of Appeals has explained,
>
> Traditionally, in tort law, "proximate cause" has been
> defined as a person's wrongful conduct which is a
> substantial factor in bringing about harm to another.
> However, an intervening act of a third party, which
> actively operates to produce harm after the first
> person's wrongful act has been committed, is a
> superseding cause which prevents the first person from
> being liable for the harm which his antecedent wrongful
> act was a substantial factor in bringing about.

Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (*citing*
Restatement (Second) of Torts §§ 431, 440-441), *cert. denied,*
__ U.S. ___, 125 S. Ct. 868 (2005).

Here, the intervening act of Walnut Capital bringing (a so-

far unsuccessful) suit against KeyBank – the source of the

"injury" now perceived by Plaintiff – prevents Defendants from

being liable for any harm caused to KeyBank by their wrongful

conduct in misrepresenting the authorship of the Opinion Letter.

Because KeyBank has neither suffered any damages to date nor

established that any such damages could be proximately by

Defendants' alleged fraud, Count IV is dismissed.

5.   *Count V – Declaratory Judgment:* Finally, KeyBank

asserts that it is entitled to a declaratory judgment pursuant to

28 U.S.C. § 2201 that Defendants are primarily liable for all of its future costs, legal fees and expenses, as well as any future adverse judgment against it, arising from the Swap Litigation. (Compl., ¶ 57.)  This claim is based on its indemnification demand at Count I (id., ¶¶ 58, 59 and 61), even though in its opposition to the Motion to Dismiss, KeyBank attempts to expand the declaratory judgment demand to cover the contribution claim in Count II as well.  (Plf.'s Opp. at 2-3.)

Because we have concluded that Plaintiff has failed as a matter of law to state a claim for indemnification or for contribution, we need not consider the question of a declaratory judgment with regard to those claims.  Count V is therefore dismissed.

   B.   Praecipe for Entry of Judgment of Non Pros[11]

On January 27, 2003, the Pennsylvania Supreme Court adopted a rule of civil procedure, effective immediately, which requires that within 60 days following a claim of professional liability brought against certain designated professionals – including attorneys – the plaintiff or his attorney must file a "certificate of merit" with the court hearing the case. Pa.R.Civ.P. 1042.3 and 1042.1.  Under the circumstances applicable to this case, the certificate of merit is to be in the

---

   [11]  This analysis applies in theory to the documents filed by both Defendants even though we have already dismissed the legal malpractice claim against Defendant Goldstein on its merits.

form of a written statement by an appropriate licensed professional (i.e., another attorney) that "there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm."  Pa. Rule 1042.3(a)(1).  "For good cause shown," a plaintiff may file with the court a motion to the extend the time in which the certificate of merit must be filed. Pa. Rule 1042.3(d).  Plaintiff concedes that it neither filed the certificates within 60 days of filing the Complaint nor requested an extension of time in which to do so.

In opposition to the praecipes, KeyBank raises several arguments.  (Opposition to Defendants' Request for Entry of a Judgment of Non Pros, Docket No. 19, "Plf.'s Non Pros Opp.") First, Plaintiff argues that if a certificate of merit is required (which it does not concede), it pertains only to the legal malpractice claim[12] and the other claims of the Complaint should not be dismissed for failure to file the certificate. Moreover, according to Plaintiff, the Pennsylvania rule is inapplicable because it "directly collides" with Federal Rule of Civil Procedure 41(b).  Next, Plaintiff argues that Defendants

_____

[12]  KeyBank repeatedly refers in its brief in opposition to the praecipes to the legal malpractice claim as Count IV.  However the Court assumes it is referring to Count III, not the claim for fraud alleged in Count IV.

19

will suffer no prejudice if the Court accepts the late-filed
certificates of merit because no initial case management
conference has taken place, nor has discovery begun.  Plaintiff
also contends that dismissal for failure to file the certificates
would have little effect on the final outcome of the legal
malpractice claim because it would simply re-file a separate suit
with the required certificate.  Finally, in its reply brief,
KeyBank asserts for the first time that the certificate of merit
rule does not apply because it is procedural rather than
substantive law.  (Plaintiff's Renewed Opposition to Defendants'
Request for Entry of a Judgment of Non Pros, Docket No. 26,
"Plf.'s Renewed Opp." at 1.)  We address each of KeyBank's
arguments in turn.

     1.   *Pa. Rule 1042.3 as Substantive or Procedural Law:*
We first address the question of whether the requirement for a
certificate of merit is a procedural or substantive law in light
of the fact that KeyBank's entire "argument" on this point
consists of the conclusory statement "KeyBank denies that the
state court Certificate of Merit Rule applies to this case
because it is procedural not substantive law."  (Plf.'s Renewed
Opp. at 1.)  To the best of our knowledge, no reported case in
either Pennsylvania federal courts or state courts has held that
Pa. Rule 1042.3 is simply a procedural rule.  To the contrary,
every federal district court which has addressed this issue has

concluded that it is substantive state law and, as such, is to be applied by federal courts sitting in diversity or considering pendant state-law claims.  *See* Abdulhay v. Bethlehem Med. Arts, L.P., CA 03-04347, 2005 U.S. Dist. LEXIS 21785, *12-*14 (E.D. Pa. Sept. 27, 2005), and cases cited therein.  Our conclusion is reinforced by the fact that although the Third Circuit Court of Appeals has not explicitly considered this question with regard to Pa. Rule 1042.3, it has held that a comparable New Jersey state statute, N.J. Stat. Ann. § 2A:53A-27, was substantive state law which should be applied by federal courts sitting in diversity.  Chamberlain v. Giampapa, 210 F.3d 154, 158-161 (3d Cir. 2000), applying the analysis set out in Hanna v. Plumer, 380 U.S. 460 (1965).  As have the numerous courts cited in Abdulhay, we have reviewed the purpose, content and applicability of Pa. Rule 1042.3 as outlined in Chamberlain, and agree that it should be applied as substantive law in this matter.  In light of the exhaustive consideration of this issue by the court in Abdulhay, we need not reiterate the step-by-step analysis here.  Abdulhay, 2005 U.S. Dist. LEXIS 21785 at *12-*23.

        2.  *Extent to Which Failure to File the Certificates of Merit Affects the Individual Counts of the Complaint:*  We next address Defendants' claim that the certificate of merit requirement not only applies to this case, but that failure to file such a certificate in a timely fashion requires dismissal of

the entire complaint.  (Brief in Support of the Judgment of Non Pros, Docket No. 23, at 2-4; Defendant Todd E. Reidbord's Reply in Support of Entry of Non Pros, Docket No. 24, "Reidbord Reply," joining in arguments in Goldstein Brief.)  Although not clearly articulated by either Defendant, this argument seems to rest on their conclusion that all the claims in the Complaint stem directly from the allegation of legal malpractice.

Based on the reasoning of The Honorable Stanton R. Wettick, a well-respected jurist in the Allegheny Court of Common Pleas and a recognized authority on Pennsylvania rules of civil procedure, we conclude that Plaintiff is correct in its argument that the requirement for a certificate of merit pertains only to the legal malpractice claim.  In <u>Thompson v. Jannetta,</u> No. GD-03-10662, *slip op.* (Allegheny Co., Feb. 13, 2004), Judge Wettick considered a petition to strike a judgment of non pros and held that a certificate of merit was not required in connection with a claim against a physician based on lack of informed consent. Thompson brought three claims against her physician – general negligence, assault or battery by failure to obtain informed consent, and a negligence claim against the doctor's employers -- all of which were dismissed when she failed to timely file the certificate of merit.  Judge Wettick agreed with the plaintiff that her lack of informed consent claim should be reinstated, reasoning that under Pennsylvania law, such a claim arises from

battery, not negligence, the foundation of any malpractice claim. Therefore, the certificate of merit was not required for the plaintiff to proceed with her claim of lack of informed consent. Thompson, *slip op.* at 6. Similarly, in Krauss v. Claar, 879 A.2d 302 (Pa. Super. Ct. 2005), the court held that the plaintiffs' claims of negligent misrepresentation, intentional misrepresentation, promissory estoppel, equitable estoppel, and tortious interference with contractual relations fell outside the scope of "professional liability claims" and therefore did not require a certificate of merit. Id. at 306-308; *see also*, Jackson v. Gary L. Sweitzer Enter., Inc., 67 Pa. D.&C. 4th 239, 244-245 (York Co. 2004), reaching a similar conclusion with regard to claims of fraud and consumer protection law violations.

Here, Plaintiff's claims for indemnification, contribution, fraud, and a declaratory judgment do not depend on a determination that Defendants' actions "fell outside acceptable professional standards" for attorneys. Consequently, failure to file a certificate does not preclude consideration of those claims. The discussion which follows therefore applies only to Count III of the Complaint.

3. *Prejudice:* Next, we reject Plaintiff's contention that we should accept the certificates of merit despite the fact they were filed some eighty days after the Complaint because Defendants have failed to show that any prejudice resulted from

their untimely filing.  While that may be true, no such showing

of prejudice is required as a precedent to filing for entry of

judgment of non pros.  Again, we rely on the opinion of Judge

Wettick, who has specifically addressed this subject, and

determined that requiring such a showing by defendants would, for

all intents and purposes, eliminate the 60-day filing

requirement.  In <u>Helfrick v. UPMC Shady Side Hospital</u>, 65 Pa.

D.&C. 4th 420 (Allegheny Co. 2003), Judge Wettick noted:

> If a court were to apply Rule 126[13] to a petition to
> open a judgment of non pros for failure to file a
> certificate of merit unless the defendant can show
> prejudice, the petition would almost always be granted.
> Defendants are not going to be able to show that they
> were prejudiced by the late filing of a certificate of
> merit regardless of whether the delay involves 10 days,
> 30 days, or 90 days. Consequently, the use of a
> prejudice standard would eliminate the rule's deadlines
> for filing certificates of merit.

<u>Helfrick</u>, 65 Pa. D.&C. 4th at 424-425; *see also* <u>Abdulhay</u>, 2005
U.S. Dist. LEXIS 21785 at * 33, *citing* <u>Helfrick</u>, <u>id.</u>, commenting
that such a requirement would "emasculate" Pa. Rule 1042.3.

Thus, although as discussed below, we will accept the

certificates of merit, we do not do so because we are persuaded

by Plaintiff's argument regarding lack of prejudice to

Defendants.  Rather, in the absence of guidance from the Third

Circuit on this question, we conclude that it is within a court's

---

[13]    Pennsylvania Rule of Civil Procedure 126 provides:  "The rules
shall be liberally construed to secure the just, speedy and
inexpensive determination of every action or proceeding to which they
are applicable. The court at every stage of any such action or
proceeding may disregard any error or defect of procedure which does
not affect the substantial rights of the parties."  Pa.R.Civ.P. 126.
Liberal Construction and Application of Rules.

discretion to accept late filed certificates in light of all the facts and circumstances of a particular case, including, as here, whether the underlying claim could be timely refiled.

4.    *"Direct Collision" with Federal Rule of Civil Procedure 41(b):*  Plaintiff argues that "no mechanism exists under the federal rules empowering a Clerk of Court to dismiss an action simply upon the filing of a praecipe by a defendant." KeyBank asserts that Pa. Rule 1042.3 directly collides with Federal Rule of Civil Procedure 41(b) because the Pennsylvania rule *requires* that a claim be dismissed for failure to file the certificate of merit, whereas the Federal rule provides the court with *discretion* to dismiss the claim for failure to prosecute a claim.[14]  Because application of the Pennsylvania rule would be in effect an abrogation of the federal court's discretion, the Court should refuse to apply the state rule.  (Plf.'s Non Pros Opp. at 4-5.)

We note initially that although Plaintiff repeatedly refers to application of the rule requiring the certificate, i.e., Pa. Rule 1042.3, it is actually objecting to the corollary rule which

---

[14]   The federal rule in question provides in full: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.  Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." Fed.R.Civ.P. 41(b).  Involuntary Dismissal: Effect Thereof.

sets out the procedure for a defendant to achieve dismissal of a claim if the certificate is not filed, i.e., Pa. Rule 1042.6. That Rule provides in pertinent part:

> The prothonotary, on praecipe of the defendant, shall enter a judgment of non pros against the plaintiff for failure to file a certificate of merit within the required time provided that there is no pending timely filed motion seeking to extend the time to file the certificate.

Pa.R.Civ.P. 1042.6(a).  Entry of Judgment of Non Pros for Failure to File Certification.

To date, the only case in this Circuit[15] to address the interplay of Pa. Rule 1042.6 and Federal Rule 41(b) is Abdulhay v. Bethlehem Med. Arts, *supra.*  There, the plaintiff brought suit against an architect (a profession also subject to the certificate of merit requirement) and his firm for purported federal civil rights violations, based on the racially discriminatory way in which the architect treated him during renovation of Abdulhay's offices.  One count of the amended complaint alleged architectural malpractice by the defendant's firm, thus triggering Pa. Rule 1042.3.  When Abdulhay failed to file the necessary certificate of merit, defendants filed a praecipe for entry of judgment of non pros pursuant to Pa. Rule 1042.6.  The plaintiff moved to strike the praecipe and filed the

---

[15]  The Court has also researched this issue in other federal circuits in which the states require comparable certificates or affidavits.  We have been unable to identify any other reported case which addresses the question of whether Federal Rule 41(b) directly collides with such state requirements.

necessary certificate.  <u>Abdulhay</u>, 2005 U.S. Dist. LEXIS 21785 at
*2-*6.  Abdulhay did not dispute the applicability of Pa. Rule
1042.3, but argued that Pa. Rule 1042.6 is a state procedural
rule inapplicable in federal court because it conflicts with
Federal Rules 7(b) and 41(b), as well as with a rule of the
Eastern District of Pennsylvania, Local Rule 7.1.[16]  The crux of
the argument was that the defendants should not have filed a
praecipe, but rather a motion and proposed order in accordance
with the federal and local rules.  <u>Id.</u> at *8-*9.

Applying the analysis set out by the Third Circuit in
<u>Chamberlain</u>, the court concluded that Federal Rule 41(b) did not
directly collide with Pa. Rule 1042.3 because the latter did not
address any form of dismissal; that is, filing a certificate of
merit serves a completely different purpose and is a completely
different process from moving for an involuntary dismissal.
<u>Abdulhay</u>, 2005 U.S. Dist. LEXIS 21785 at *12-*23.  On the other
hand, the court concluded that Pa. Rule 1042.6 is procedural and
therefore its enforcement remedies are not available in federal
court.  First, the court concluded that the requirement is
"merely the form and mode of enforcing the substantive

---

[16]  Federal Rule 7(b) requires that an application to the court
for an order (unless made during a hearing) shall be by written
motion, stating with particularity the grounds for the motion and the
relief sought.  Local Rule 7.1 requires that every motion be
accompanied by a proposed order granting the relief sought.  <u>Abdulhay</u>,
2005 U.S. Dist. LEXIS 21785 at *7-*8.

certificate of merit right," but was not "bound up with the definition of the right or obligation." Id. at *23-*24. Next, the court concluded that, to its knowledge, no federal court had concluded that Pa. Rule 1042.6 was substantive, as opposed to procedural, law and that no federal court had applied the rule "as a Pennsylvania state court would in a state action." The Abdulhay court also found that no federal court had recognized the device of a praecipe for entry of judgment of non pros as "a legitimate procedure in federal practice," nor concluded that the praecipe should be automatically entered by the federal clerk of court in the absence of a court order directing the clerk to do so.[17] Id. at *24.

Reasoning that a judgment of non pros is, in essence, an involuntary dismissal for failure to prosecute a case, the court concluded that this process in federal practice is governed by Rule 41(b). Because the federal rule is sufficiently broad to control the issue, the state and federal rules directly collide and Pa. Rule 1042.6 cannot be applied in federal court. Abdulhay, 2005 U.S. Dist. LEXIS 21785 at *26-*29. The court therefore struck the defendants' praecipe for entry of judgment of non pros from the record.

As noted above, the Third Circuit Court of Appeals has not

---

[17] We note for the record that no other court appears to have considered the implications of Pa. Rule 1042.6 in federal cases, so these results are not surprising.

addressed Pa. Rule 1042.3, nor the enforcement provision in Pa.
Rule 1042.6.  Only one other federal court in this Circuit has
considered dismissal of a malpractice claim when that request was
made in the form of an entry of judgment of non pros rather than
as a motion to dismiss.[18]  In <u>Velazquez v. UPMC Bedford Mem'l
Hosp.</u>, 328 F. Supp.2d 549 (W.D. Pa. 2004), on reconsideration by
<u>Velazquez v. UPMC Bedford Mem'l Hosp.</u>, 338 F. Supp. 2d 609 (W.D.
Pa. 2004), Judge Kim Gibson of this district twice considered
such an action, treating it as if it were a motion to dismiss.
The <u>Velazquez</u> analyses did not address the court's authority to
rule on a judgment of non pros, and, in the second opinion, Judge
Gibson explicitly directed the clerk of court to enter the
judgment as such.  <u>Id.</u> at 613.

    Although we do not disagree with the conclusion of our
sister court in the Eastern District, we find the result less
than pragmatic in light of the circumstances herein.  Were we to
strike the praecipe, Mr. Reidbord presumably would try to file a
motion to dismiss, leading to unnecessary delay in the resolution

---

        [18]  In the following cases, the defendant moved for dismissal of
the malpractice claim under Fed.R.Civ.P. 12(b)(6) and Pa. Rule 1042.6
did not come directly into play:  <u>Rodriguez v. Smith</u>, CA No. 03-3675,
2005 U.S. Dist. LEXIS 12237 (E.D. Pa. June 21, 2005); <u>Anspach v. City
of Phila.</u>, CA No. 05-810, 2005 U.S. Dist. LEXIS 16587 (E.D. Pa. June
20, 2005); <u>Scaramuzza v. Sciolla</u>, 345 F. Supp.2d 508 (E.D. Pa. 2004)
(precise basis of motion to dismiss is unclear).  In <u>Schwalm v.
Allstate Boiler & Constr., Inc.</u>, CA No. 04-593, 2005 U.S. Dist. LEXIS
12422 (M.D. Pa. May 17, 2005), defendant filed a "Motion to Dismiss
and For Entry of Praecipe of Judgment of Non Pros" which the court
denied on grounds irrelevant to this analysis.

of this case.  *See* cases listed in footnote 18, considering such
motions.  While we agree with the <u>Abdulhay</u> court that the form of
the document filed by Defendants is incorrect, we find that
striking the praecipes would accomplish no purpose.  Since the
Third Circuit has not spoken on this issue,[19] we follow the
example of Judge Gibson and treat Mr. Reidbord's praecipe as if
it were a motion to dismiss the malpractice claim.

   5. *Refiling of the Legal Malpractice Claim within the
Statute of Limitations:* Finally, Plaintiff contends that
dismissal would have little effect on the final outcome of the
legal malpractice claim because it would simply re-file a
separate suit, resulting in "needless paper shuffling,"
increasing the Court's caseload, and benefitting no one.  (Plf.'s
Non Pros Opp. at 3-4, *quoting* <u>Scaramuzza v. Sciolla</u>, 345 F.
Supp.2d 500 (E.D. Pa. 2004).)  As Judge Wettick has pointed out,
under Pennsylvania law, an entry of non pros against a plaintiff
does not bar the plaintiff from re-commencing the same cause of
action, assuming the applicable statute of limitations has not

---

[19]  The Third Circuit in <u>Chamberlain</u> did recognize that the New
Jersey statute provided that failure to file the required affidavit
"shall be deemed a failure to state a cause of action."  The Court
read this language as "the New Jersey legislature's way of saying that
the consequences of a failure to file shall be the same as those of a
failure to state a claim."  <u>Chamberlain</u>, 210 F.3d at 160-161, *citing*
N.J. Stat. Ann. 2A:53A-29.  Unlike the Pennsylvania statute, the New
Jersey statute does not provide a special mechanism comparable to the
entry for judgment of non pros, relying instead on the standard
procedure of a motion to dismiss.  *See* <u>Knorr v. Smeal</u>, 836 A.2d 794,
797-798 (N.J. 2002).

run.  Helfrick, 65 Pa. D.&C. 4th at 428.

Although Mr. Reidbord concedes that a judgment of non pros is not a claim on the merits, he argues that Plaintiff's argument overlooks the statute of limitations on a legal malpractice claim.  His position is that despite the fact that the Complaint is less than clear about "who is alleged to have committed malpractice to whom," any injury KeyBank sustained as a consequence of his alleged actions began with the filing of the lawsuit by Walnut Capital on April 1, 2003, or, at the latest, on April 28, 2003, when KeyBank filed a motion to dismiss Walnut Capital's complaint.  (Reidbord Reply at 1-3.)

Under Pennsylvania law, the statute of limitations for bringing a claim of legal malpractice based in tort is two years. 42 Pa. C.S. § 5524; *see also* Pettit v. Smith, CA No. 98-6707, 1999 U.S. Dist. LEXIS 17835, * 7 (E.D. Pa. Nov. 17, 1999).  An action for malpractice accrues at the point an attorney breaches his or her professional duties to the client/plaintiff.  Pettit, id., *citing* Garcia v. Community Legal Services Corp., 524 A.2d 980, 984 (Pa. Super.Ct. 1987), and Moore v. McComsey, 459 A.2d 841, 844 (Pa. Super.Ct. 1983).  Under the facts of this case, we conclude that the malpractice alleged by Plaintiff occurred on or before March 23, 2000, when the Opinion Letter was drafted. Normally, then, a legal malpractice suit based on that letter should have been filed not later than March 23, 2002, in order to

be timely.

However, Pennsylvania recognizes the discovery rule in cases of legal malpractice. "Where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." Pettit, 1999 U.S. Dist. LEXIS 17835 at *9, *citing, inter alia*, Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997). Applying the discovery rule to Mr. Reidbord's timetable above, the legal malpractice claim had to have been brought not later than April 28, 2005. Consequently, if the judgment for entry of non pros is granted, even the discovery rule will not save any subsequent attempt by KeyBank to refile its suit. (Reidbord Reply, *passim*.)

KeyBank contends it did not discover the legal malpractice when it learned it had been sued by Walnut Capital, nor when it filed the motion to dismiss in the Swap Litigation. Rather, it was not aware of the malpractice until May 4, 2004, when Walnut Capital for the first time rejected the statements in Opinion Letter that the Swap documents were legally binding, valid, and enforceable obligations. (Plf.'s Renewed Opp. at 2, *see also* Compl., ¶¶ 18-19.) Therefore, according to KeyBank, the statute of limitations continues to run until at least May 4, 2006.

If we treat the praecipe as the functional equivalent of a

32

motion to dismiss, we are compelled to accept KeyBank's
allegation that it did not learn of its potential injury until
May 4, 2004.  Therefore, we agree that it could timely file
another suit restating this claim.  *See* <u>Anspach v. City of
Phila.</u>, CA No. 05-810, 2005 U.S. Dist. LEXIS 16587, *5-*6 (E.D.
Pa. June 20, 2005) and <u>Scaramuzza</u>, 345 F. Supp.2d at 511-512,
arriving at a similar conclusion.  However, as discussed above,
all the claims against Mr. Goldstein – including the legal
malpractice claim – have been dismissed on their merits; to the
extent Plaintiff might choose to file a new malpractice claim, it
could only be against Mr. Reidbord.

      Although we by no means excuse Plaintiff's failure to timely
file the necessary certificate of merit, we agree that in this
case, dismissing the legal malpractice claim against Mr. Reidbord
would simply result in unnecessary paper shuffling, particularly
because the other four claims against him have not been
dismissed.  The praecipe for entry of judgment of non pros,
Docket No. 12, is therefore denied.

      An appropriate Order follows.


                                    s/William L. Standish
                                 William L. Standish
                                 U.S. District Judge

Signed: November 28, 2005

33

cc:

Amy E. Bentz
Bentz Law Firm, P.C.
The Washington Center Building
680 Washington Road, Suite 200
Pittsburgh, PA 15228
Email: aebentz@bentzlaw.com

James W. Bentz
Bentz Law Firm, P.C.
The Washington Center Building
680 Washington Road, Suite 200
Pittsburgh, PA 15228
Email: jwbentz@bentzlaw.com

John C. Monica, Jr.
Porter, Wright, Morris & Arthur
925 Euclid Avenue
1700 Huntington Building
Cleveland, OH 44115-1483

John A. Mugnano
Porter, Wright, Morris & Arthur
925 Euclid Avenue
1700 Huntington Building
Cleveland, OH 44115-1483

Philip Langer
Porter, Wright, Morris &
Arthur
925 Euclid Avenue
1700 Huntington Building
Cleveland, OH 44115-1483

Mark E. Ulven
Hergenroeder, Rega & Sommer
650 Smithfield Street
Centre City Tower, Suite 1700
Pittsburgh, PA 15222
Email: mulven@hrslaw.com

Robert B. Sommer
Hergenroeder, Rega & Sommer
650 Smithfield Street
Centre City Tower, Suite 1700
Pittsburgh, PA 15222
Email: rsommer@hrslaw.com

David L. Haber
Weinheimer, Schadel & Haber
429 Fourth Avenue
602 Law & Finance Building
Pittsburgh, PA 15219
Email: dlh@wshpc.com